660

District Court of the United States for the District of Columbia.

Jan. 31, 1945.

George E. C. Hayes, of Washington, D. C., for plaintiff.

Vernon Booth Lowrey, of Washington, D. C., for defendant.

GOLDSBOROUGH, Associate Justice.

This case was heard on an agreed statement of fact as follows:

"1. Following the findings of fact and the decree of the Court entered into in Civil Case No. 1537 on the 19th day of March, 1942, copy of which is attached to the defendant Keet's Answer filed herein, Holmes and Keets operated the Whitelaw Hotel under the decree. They, by mutual agreement, entered into a formal partnership agreement on the 15th day of August, 1942, copy of which is attached to the plaintiff Holmes' Complaint filed herein.

"2. From that time to this they have continued to operate the Whitelaw Hotel as partners.

"3. For many years both parties to this suit have dealt in rental properties in the City of Washington, owning and operating each in his separate name and without relationship to each other, properties from which each has received revenues.

"4. Keets acquired ownership of a three-story and basement brick building, containing sixteen rooms, next adjacent on the south to the property of the Whitelaw Hotel during the year 1930. He began to operate this property as the Hotel Henry under a Hotel license in 1934. It is still operated, advertised and listed in the phone book as Hotel Henry, but since March 1942, it has been operated under a Lodging House License instead of a Hotel License.

"5. In July 1936, Keets purchased three old frame dwellings from the Alley Authority of the District of Columbia located next adjacent on the south to the Hotel Henry property. At that time two of these buildings were vacant; the third was occupied by a tenant who had lived there many years. One of these properties, No. 1823, remained vacant until torn down in 1943; No. 1821, if occupied at all, was occupied for short intervals only, and the long-time tenant remained in No. 1819. Beginning early in 1942, and prior to August 15, 1942, Keets expended large sums of money in improving these properties.

"6. In March, 1943, Keets contracted with Hudnell and Hudson to raise these three old frame dwellings higher off the ground to the level of the first floor of 1825 13th Street, so as to provide a basement and central heating plant under them. In the operation of raising these buildings, timbers in them parted and gave away in such manner that they were condemned by the building inspector. Thereupon Keets tore them down and built a new brick building in place of them. This building was joined on to and made into one with the original Hotel Henry and was completed in February 1944. It has been operated since as part of the Hotel Henry under a Lodging House License.

"7. When Keets first acquired these three old properties from the Alley Authority they contained a total of eighteen rooms. The new building contains 25 rooms.

"8. The reconstructed properties open into the original Hotel Henry Building. They have no public entrance of their own. Since its completion the new building has been continuously operated under the Lodging House License taken out in the name of the Hotel Henry in March, 1942, as hereinbefore set forth.

"9. It is stipulated by and between the parties that the parties knew generally of the real estate activities of each other at the time they entered into the partnership agreement of August 15, 1942; and that Holmes knew at that time that Keets was operating the Hotel Henry, and that he owned the adjacent properties. Holmes did not know at that time that Keets was operating these properties under his Hotel Henry Lodging House License. The subject was not mentioned in connection with the partnership agreement of August 1942. Holmes asked no questions about these properties, and Keets made no statements about them. When Holmes learned of Keets' reconstruction job in 1943, he raised the question as to whether or not this was in conflict with Keets' partnership agreement in connection with the Whitelaw Hotel, and made the tender of treating it as part of the partnership property and paying on his own part half the cost and expense. There were negotiations between the parties, but they were not able to come to an agreement and this litigation resulted."

The plaintiff asks that the annex to the Hotel Henry be declared "a partnership asset and authorizing the right of participation in same by this plaintiff upon his paying over to the defendant his proportionate share of any such amount as may have been expended by him, and/or to assume his share of any outstanding liabilities properly created in the construction of said aforementioned property."

As the plaintiff was fully acquainted with the fact that the defendant owned and operated the Hotel Henry and adjoining property at the time he entered into the partnership agreement with defendant and as there was nothing clandestine at the time of the partnership agreement about the defendant's lodging house license covering the Hotel Henry and adjoining properties, what the plaintiff is really saying is that the defendant cannot improve his properties in a perfectly normal manner, the possibility of which could clearly be anticipated at the time the partnership agreement was entered into, without the improvements becoming a partnership asset at the option of plaintiff. There is, of course, no equitable principle upon which the plaintiff's claim can be based.

The clearest statement of the responsibilities involved in the fiduciary relationship between partners, of which the Court is familiar, appears in the case of Latta v. Kilbourn, 150 U.S. 524, 541, 14 S.Ct. 201, 207, 37 L.Ed. 1169: "The general principles on which the court proceeded admit of no question, it being well settled that one partner cannot, directly or indirectly, use partnership assets for his own benefit; that he cannot, in conducting the business of a partnership, take any profit clandestinely for himself; that he cannot carry on the business of the partnership for his private advantage; that he cannot carry on another business in competition or rivalry with that of the firm, thereby depriving it of the benefit of his time, skill, and fidelity, without being accountable to his copartners for any profit that may accrue to him therefrom; that he cannot be permitted to secure for himself that which it is his duty to obtain, if at all, for the firm of which he is a member; nor can he avail himself of knowledge or information which may be properly regarded as the property of the partnership, in the sense that it is available or useful to the firm for any purpose within the scope of the partnership business."

Suppose the defendant, whom the plaintiff knew to be a hotel man and rental

662

property operator, had built a hotel of fifty rooms in 1943 in a good neighborhood five blocks from the partnership property. Could the plaintiff have claimed a violation of the partnership agreement? And yet the competition with the partnership property would have been greater than that of the annex.

Suppose the defendant, instead of building the annex, had merely made extensive improvements in the Hotel Henry so as to make it more attractive to the transient public. Could the defendant have claimed successfully a violation of the partnership agreement?

■ The Court is clearly of the opinion that the agreed statement of fact contains nothing indicating a violation of the partnership relationship on the part of the defendant.

The complaint is dismissed with costs.